UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Ariel Colquitt,
Lavunte Colquitt,

        Plaintiffs,                      Civil Action No. _____

v.                                     **COMPLAINT**

Dominium Management Services, LLC.

        Defendants.
_____

## INTRODUCTION

      1.      This lawsuit arises from Defendant's discriminatory conduct against and interference with Plaintiffs' right to live free from housing discrimination. This action is for declaratory judgment, damages, attorney's fees and equitable relief under the federal Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq*; and the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq*.

      2.      Plaintiffs Ariel Colquitt ("Ms. Colquitt") and Lavunte Colquitt ("Mr. Colquitt") and their two young children are the current tenants of Defendant Dominium Management Services, LLC ("Dominium"), at the Huntington Place Apartments community managed by Defendant Dominium.

      3.      Defendant Dominium has discriminated against Ms. Colquitt by refusing to renew her lease because of her familial status and by failing to reasonably accommodate her disabilities. Defendant Dominium has discriminated against Mr. Colquitt by refusing

1

to renew his lease because of his familial status.  Defendants continue to engage in such discrimination so as to constitute a continuing violation.

## JURISDICTION AND VENUE

4. Plaintiff's claims are authorized by 42 U.S.C. § 3613, Minn. Stat. § 8.31, Subd. 3a, and Minn. Stat. § 363A.33.

5. This Court has jurisdiction pursuant to 42 U.S.C. § 3613 and 28 U.S.C. §§ 1331 and 1367.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims herein because those claims are so related to the federal law claims over which this Court has original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

6. The requests for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202.

## PARTIES

7. Plaintiffs Ariel and Lavunte Colquitt reside at 5849 73rd Avenue North, Apartment 003, Brooklyn Park, Minnesota 55429 pursuant to a written rental lease agreement with Defendant Dominium Management Services, LLC.

8. Defendant Dominium Management Services, LLC, upon information and belief, is a limited liability company organized under the laws of the State of Minnesota, with a principal place of business at 2905 Northwest Boulevard, Suite 150, Plymouth, Minnesota 55441.  Dominium Management Services, LLC is the property manager of the leased rental premises.

# FACTS

## Tenancy, August 2012 through January 2018

9. On or about August 2012, Plaintiffs Ariel and Lavunte Colquitt entered into an initial written lease for the rental of 5849 73rd Avenue North, Apartment 003, Brooklyn Park, Minnesota 55429.

10. From that time, continuing until 2018, Mr. and Ms. Colquitt have signed year-long written lease renewals every year.

11. Mr. and Ms. Colquitt live at the apartment with their two children, an 8-year-old son, J.C., and a 3-year-old daughter, A.C.

12. The apartment is a 685 square foot, one-bedroom unit.

13. The bedroom in the apartment is approximately 140 square feet.

14. The living room in the apartment is approximately 220 square feet.

15. Defendant Dominium's interests are represented at the property by their agent, Susan Meyer, the on-site property manager.

16. Ms. Meyer conducts two inspections of the apartment every year.

17. When Ms. Meyer has conducted the biannual inspection of the apartment, the entire Colquitt family has almost always been present.

18. Specifically, the older Colquitt child, J.C., has generally been present during the biannual inspections.

19. And, the youngest child, A.C., has generally been present during the biannual inspections since her birth in November of 2014.

20. Ms. Colquitt is disabled, as explained in further detail below, and Mr. Colquitt is her caregiver, so A.C. and J.C. are generally with Mr. and Ms. Colquitt at all times of the day unless they are being watched and cared for by someone else or are at school.

21. Mr. and Ms. Colquitt have never attempted to hide their children or the composition of their household.

22. The apartment building in which Mr. and Ms. Colquitt's apartment is located has a management office, and Defendant's employee's staff that office.

23. Mr. and Ms. Colquitt have walked by Defendant's onsite management office with their two children.

24. Additionally, Mr. and Ms. Colquitt walk through the common areas of the building with their children.

25. The Colquitts' neighbors and other tenants are aware that they have two children.

26. Therefore, it is extremely unlikely that Defendant has been unaware for three years of the Colquitts' family composition.

**February 2018 Insepction**

27. On or about February 2018, Defendant's agent, Ms. Meyer, conducted an inspection of the Colquitts' apartment.

28. The entire Colquitt family was present during this inspection.

29. During the inspection, Ms. Meyer inquired whether there were four people living in the apartment.

30. Mr. Colquitt informed her that there were four people living in the unit, including himself, Ms. Colquitt, J.C., and A.C.

31. In response, Ms. Meyer stated that Defendant would not be renewing the Colquitts' lease in August 2018 "because [the Colquitts] now have two children."

32. Ms. Meyer further informed the Colquitts that the reason they could not live in the building with two children is that Defendant has an occupancy limit of only three tenants per unit in the building.

33. Defendant cited no Brooklyn Park, Minnesota ordinance that dictates an occupancy limit of three people in a one-bedroom apartment.

34. The day after the February 2018 inspection, Mr. Colquitt met with Ms. Meyer.

35. During this meeting, he informed Ms. Meyer that he could find no Brooklyn Park ordinance limiting occupancy in a one-bedroom unit to three people, and asked her to reconsider.

36. Ms. Meyer did not substantively respond to these statements during the meeting, instead stating that she did not know what Brooklyn Park's ordinances stated regarding occupancy limits, and that she would need to speak with Defendant Dominium's attorneys.

**Lease Non-Renewal**

37. The following day, Ms. Meyer called Mr. Colquitt. During this phone call, she did not tell Mr. Colquitt that Brooklyn Park has any occupancy limits preventing the Colquitt family from living in the apartment.

38. Rather, Ms. Meyer told Mr. Colquitt that the federal prohibition against discrimination based on familial status did not apply to the Colquitts' situation, and that the Colquitts would need to move at the end of their lease term on July 31, 2018.

39. The Colquitts were issued a written notice of non-renewal of lease on May 15, 2018.

40. The notice to vacate dated May 15, 2018 was issued specifically because of the Colquitts' familial status.

**Ms. Colquitt's Request for an Accommodation of Her Disabilities**

41. Ms. Colquitt was diagnosed with Post-Traumatic Stress Disorder (PTSD), Panic Disorder, and Major Depression in 2011.

42. These disorders cause Ms. Colquitt to be suffer agoraphobia, flashbacks, insomnia, panic attacks on a daily basis, chronic anxious and depressed mood states with thought content that is focused on fears for the safety of herself and her family. She is extremely sensitive to transitions and is challenged by being alone. Her symptoms are significant.

43. For example, through extensive therapy, she has recently achieved the goal of her being able to remain in the home alone when Mr. Colquitt goes the mailbox.

44. Ms. Colquitt's apartment is her safe place. Having an established safe place has been pivotal in her PTSD therapy.

45. Ms. Colquitt's disabilities are extensive enough that Mr. Colquitt has been designated her caregiver under the Minnesota Family Investment Program's Diversionary Work Program (MFIP/DWP).

46.   Ms. Colquitt's mental health care provider is Diana Snyder, LICSW.  Ms. Snyder has been Ms. Colquitt's provider since her diagnosis in 2011.

47.   On June 5, 2018, Ms. Colquitt made a reasonable accommodation request to Defendant, asking for an accommodation of her disabilities by permitting one additional year renewal of their lease, to provide them with adequate time to move given her disabilities.

48.   Ms. Colquitt's first reasonable accommodation request was supported by a letter from Ms. Snyder.

49.   Mr. Colquitt personally brought the reasonable accommodation request to Ms. Meyer at the on-site rental office.

50.   Upon delivery of the request, Ms. Meyer told Mr. Colquitt that she wished that the Colquitts had told Defendant that they were requesting a reasonable accommodation earlier, and that this would have helped them to process the request.

51.   On June 12, 2018, Ms. Meyer called Mr. Colquitt and asked him to come to the on-site rental office.

52.   When he arrived at the rental office, Ms. Meyer was present, along with Defendant's regional property manager, Gina Estrem.

53.   Ms. Estrem and Ms. Meyer informed Mr. Colquitt that they could not process the first reasonable accommodation request because it was not submitted on Defendant's reasonable accommodation form, and asked him to fill out a second reasonable accommodation request form with Ms. Colquitt.

54. Mr. Colquitt immediately called Ms. Colquitt from the rental office, filled out the form with her assistance, and submitted the second reasonable accommodation request that day.

55. Also on June 12, 2018, Ms. Meyer sent a reasonable accommodation verification form to Ms. Snyder. Ms. Snyder filled out and submitted the verification form to the landlord shortly thereafter.

56. On the reasonable accommodation verification form, Ms. Snyder communicated Ms. Colquitt's specific disabilities and communicated that Ms. Colquitt identifies her apartment as "her safe place" and that "Establishing this sense of safety has been pivital [sic] in our working through her PTSD and trauma."

57. Moreover, Ms. Snyder communicated that her clinical opinion was "any major changes such as a relocation at this time will create significant therapeutic setbacks and be a detriment to the gains [Ms. Colquitt] is in the progress of making."

58. On or about July 9, 2018, almost a full month after the second reasonable accommodation request was submitted, Ms. Meyer called Mr. Colquitt and told him that the request was being denied.

59. Mr. Colquitt asked for written documentation of the denial, after which Ms. Estrem sent him an email containing a reasonable accommodation denial letter. Mr. Colquitt also picked up a physical copy of the denial letter at the rental office.

60. The denial letter stated that Ms. Colquitt's request for a year-long extension to move as an accommodation of her disabilities was denied, but that Defendant Dominium would let the Colquitts sign a three-month lease extension instead.

**Three-Month Lease**

61. Following the denial of Ms. Colquitt's request for a reasonable accommodation, the Colquitts were in an extremely difficult and time-sensitive position.

62. Because it took almost a month for the Colquitt's to receive a decision from Defendant after submitting the second reasonable accommodation request, the Colquitts had less than a month before the end of their current lease term at the end of July 2018.

63. Neither Mr. Colquitt nor Ms. Colquitt believed they had time to dispute the denial before the end of their current lease term.

64. Further, both Mr. Colquitt and Ms. Colquitt believed that they would be homeless if they did not sign the three-month lease extension offered by Defendant.

65. The Colquitts did not know their legal rights before signing the three-month lease extension and did not have time to consult with a lawyer.

66. Therefore, the Colquitts both felt that there was no other option than to sign the three-month extension agreement.

67. On July 12, 2018, the Colquitts signed the three-month lease extension.

**Retention of Legal Counsel**

68. On August 22, 2018, Ms. Colquitt sought legal counsel.

69. Through counsel, Ms. Colquitt has made several requests to Defendant to reconsider its denial of her reasonable accommodation request.

70. These requests for reconsideration have all been denied.

**Defendant's Intent to Force Plaintiffs from their Apartment**

71. The three-month lease extension expires on October 31, 2018.

72. If the Colquitts have not vacated the apartment by that time, Defendant intends to force Mr. and Ms. Colquitt from their apartment.

**The Consequences of Being Forced from the Apartment**

73. If Mr. and Ms. Colquitt are forced from their apartment, they will be homeless.

74. Homelessness will severely impact Ms. Colquitt's health and safety by reason of her extensive disabilities.

75. It will also severely impact the health and safety of their young children. It will also impact the stability of J.C.'s education, as he is already in the middle of the school year.

76. Because the winter is fast approaching, and it is hard to locate stable housing during the winter, it will also be extremely difficult for the Colquitts to find stable housing for the winter months.

77. Defendant has provided the Colquitts no specific business reasons why they cannot permit four people to stay in one of their apartments, especially for only one year.

78. By reason of Defendant's unlawful acts and practices, Mr. and Ms. Colquitt are being deprived of housing and have suffered a violation of their civil rights, emotional distress, including mental anguish and other special and general damages according to proof. Accordingly, Mr. and Ms. Colquitt are entitled to compensatory damages.

79. In doing the acts of which Mr. and Ms. Colquitt complain herein, Defendant acted with conscious or reckless disregard of the rights of Mr. and Ms.

Colquitt. Accordingly, Mr. and Ms. Colquitt are entitled to and will seek punitive damages.

80. There now exists an actual controversy between the parties regarding Defendant's duties under the federal and state fair housing laws. Accordingly, Mr. and Ms. Colquitt are entitled to declaratory relief.

81. Unless enjoined, Defendant will continue to engage in the unlawful acts and practices of discrimination described above by forcing Mr. and Ms. Colquitt and their family from their apartment. Mr. and Ms. Colquitt have no adequate remedy at law. Mr. and Ms. Colquitt are now suffering and will continue to suffer irreparable injury from Defendant's acts and practices of discrimination unless relief is provided by this Court. Accordingly, Ms. Colquitt is entitled to injunctive relief.

## COUNT I
### Discrimination in Making Rental Housing Unavailable in Violation of the Federal Fair Housing Act, 42 U.S.C. § 3604(a)

82. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 81 of the Complaint herein.

83. The Fair Housing Act prohibits the refusal to rent after the making of a bona fide offer, or the refusal to negotiate for the rental of, or making otherwise unavailable or denying a dwelling to any person because of familial status. 42 U.S.C. § 3604(a).

84. Defendant, knowing that the Colquitts are of a protected class, are making a dwelling unavailable to them by refusing to renew their lease and issuing them a notice to vacate their apartment based on their membership in that protected class.

11

85. Defendant has discriminated against the Colquitts based on their familial status by refusing to renew their lease and issuing them a notice to vacate due specifically to their familial status.

86. Mr. Colquitt and Ms. Colquitt are aggrieved persons under the Fair Housing Act as defined by 42 U.S.C. § 3602(i), and have suffered injury and damages as a result of Defendant's conduct.

### COUNT II
### Discrimination in the Terms and Conditions of Rental Housing in Violation of the Federal Fair Housing Act, 42 U.S.C. § 3604(b)

87. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 86 of the Complaint herein.

88. The Fair Housing Act prohibits differential treatment based on familial status in "the terms, conditions, or privileges of sale or rental of a dwelling." 42 U.S.C. § 3604(b).

89. Defendant, knowing that the Colquitts are of a protected class, have issued them different terms, conditions, and privileges of rental of their dwelling by refusing to renew their lease and issuing them a notice to vacate their unit based on their membership in that protected class.

90. Defendant has discriminated against the Colquitts based on their familial status by refusing to renew their lease and issuing them a notice to vacate due specifically to their familial status.

91. Mr. Colquitt and Ms. Colquitt are aggrieved persons under the Fair Housing Act as defined by 42 U.S.C. § 3602(i), and have suffered injury and damages as a result of Defendant's conduct.

### COUNT III
**Discrimination in Failing to Reasonably Accommodate a Disability in Violation of the Federal Fair Housing Act, 42 U.S.C. § 3604(f)**

92. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 91 of the Complaint herein.

93. The Fair Housing Act prohibits the refusal to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

94. Defendant was made aware of Ms. Colquitt's disabilities and refused to reasonably accommodate her disabilities by declining to issue her and her family a one-year lease extension to give them time to find new, stable housing.

95. Such denial constitutes a refusal to make a reasonable accommodation in Defendant's policies, practices, and procedures, and is a discriminatory practice in violation of 42 U.S.C. § 3604(f).

96. As a result of Defendants' discriminatory conduct, Ms. Colquitt has suffered injury and damages.

## COUNT IV
### Discrimination in Violation of the Federal Fair Housing Act, 42 U.S.C. § 3617

97. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 96 of the Complaint herein.

98. Defendant's conduct constituted interference with fair housing in violation of 42 U.S.C. § 3617.

99. Mr. Colquitt and Ms. Colquitt are aggrieved persons under the Fair Housing Act as defined by 42 U.S.C. § 3602(i), and have suffered injury and damages as a result of Defendant's conduct.

## COUNT V
### Discrimination Refusing to Rent Real Property in Violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.09 Subd. 1(1)

100. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 99 of the Complaint herein.

101. Defendant has refused to rent real property to Mr. Colquitt and Ms. Colquitt by declining to renew the Colquitts' tenancy and issuing them a notice to vacate because of their familial status, which is an unfair and discriminatory practice in violation of Minn. Stat. § 363A.09 Subd. 1(1).

102. As a result of Defendants' discriminatory conduct, Mr. and Ms. Colquitt have suffered injury and damages.

## COUNT V
### Discrimination in the Terms and Conditions of Rental Housing in Violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.09 Subd. 1(2)

103. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 102 of the Complaint herein.

104. Defendant discriminated against Mr. Colquitt and Ms. Colquitt by providing them different terms, conditions, and or privileges in the rental of real property based on their familial status. Specifically, Defendant declined to renew the Colquitts' tenancy and issuing them a notice to vacate because of their familial status, which is an unfair and discriminatory practice in violation of Minn. Stat. § 363A.09 Subd. 1(2).

105. As a result of Defendants' discriminatory conduct, Mr. and Ms. Colquitt have suffered injury and damages.

## COUNT V
### Discrimination Based on Disabilty in Violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.10(2)

106. Mr. Colquitt and Ms. Colquitt reallege and incorporate by reference paragraphs 1 through 105 of the Complaint herein.

107. Defendant has refused to reasonably accommodate Ms. Colquitt's disabilities declining to issue her and her family a one-year lease extension to give them time to find new, stable housing. Such denial constitutes a refusal to make a reasonable accommodation in Defendant's policies, practices, and procedures, and is a discriminatory practice in violation of Minn. Stat. § 363A.10(2).

108. As a result of Defendants' discriminatory conduct, Ms. Colquitt has suffered injury and damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A.     A judicial declaration that Defendant has violated Mr. Colquitt's and Ms. Colquitt's rights under the federal Fair Housing Act, 42 U.S.C. § 3604 *et seq.*, and the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.*;

B.     Compensatory damages;

C.     Punitive damages;

D.     Reasonable attorney's fees, costs and expenses pursuant to 42 U.S.C. § 3613, Minn. Stat. § 363A.33 Subd. 7, and Minn. Stat. § 8.31, Subd. 3a;

E.     Temporary injunctive relief permitting the Colquitts to remain in their home before disposition of this case after trial on the merits; and preventing Defendant, its partners, agents, employees, representatives, assignees, and all persons acting in concert or participation with them from making any further contact with the Colquitt family with regard to their rental housing, and requiring that any communications about the rental housing be made only through counsel until further order of this Court;

F.     Preliminary injunctive relief, as necessary, and permanent injunctive relief enjoining all unlawful acts and practices complained about herein and ordering Defendant, its partners, agents, employees, representatives, assignees, and all persons acting in concert or participation with them to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to disability or familial status; and

G.     Any further relief as deemed by this Court to be just and proper.

Respectfully submitted,

**MID-MINNESOTA LEGAL AID**

Dated:  October 29, 2018    BY:    /s/ Jeffer Ali
Jeffer Ali, Attorney ID No. 0247947
430 First Avenue North, Suite 300
Minneapolis, MN 55401
Telephone/Facsimile (612) 332-1441
jali@mylegalaid.org

*Attorney for Plaintiffs Ariel Colquitt and Lavunte Colquitt*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Ariel Colquitt and Lavunte Colquitt hereby demand a trial by jury of all issues triable of right by a jury.